## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SUSAN PASKOWITZ,

                   Plaintiff,

    v.

ZEFF CAPITAL, LP,  ZEFF HOLDING
COMPANY, LLC, QAR INDUSTRIES, INC.,
FINTECH CONSULTING LLC, DANIEL ZEFF,
ROBERT FITZGERALD, and TAJUDDIN
HASLANI,

                   Defendants.

Civil Action No.

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF TO REMEDY VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND RELATED STATE LAW

Susan Paskowitz, through her undersigned counsel, alleges as follows on actual knowledge as to her own acts, and on information and belief as to all other allegations, after due investigation by counsel, as follows:

### NATURE OF THE ACTION

1.    This case arises out of unusual circumstances, and involves a battle for control of TSR, Inc. ("TSRI" or the "Company").  TSRI is  a publicly traded company primarily engaged in the business of providing IT staffing for various companies.  Plaintiff is a long-term shareholder who seeks to protect her own interests, and those of TSRI's minority shareholders.  The focus of this action is the

annual meeting of TSRI shareholders, originally scheduled for November 28, 2018 but now adjourned *sine die* by TSRI, amid accusations by TSRI and Plaintiff herein that an insurgent group of activist shareholders (which falsely denies it is a group) is seeking to obtain the approval of certain proxy proposals by deceptive means. Such proposals, if adopted, may benefit the insurgent group, while having a negative effect on TSRI and its public stockholders.  As discussed below, deceptive proxies should be enjoined under federal law, and ordered corrected by the Court.  Likewise, concealed groups should be ordered exposed; their plans revealed; and their machinations halted, if they offend the concepts of fairness and equity.

2.      The battle for TSRI has spawned litigation in three *fora*.  First, plaintiff herein brought a class action in New York State court based on state law violations only.  She faulted the actions of not only TSRI and its Board of Directors in its response to the insurgent  investors, but also actions taken by its retired CEO in selling his shares to an insurgent group. She also faulted actions taken by that insurgent group, referred to herein as "the Zeff Group."[1]  The Zeff Group consists of: (1) defendants Zeff Capital, LP, an investment fund, its affiliate Zeff Holding Company, LLC (collectively, "Zeff"), and its controller Daniel Zeff; (2) defendant Fintech Consulting, LLC ("Fintech"), an IT staffing company which is a bitter rival

---

[1]    That action is *Paskowitz v. Hill, et al.,* Index No.: 715541/2018 (N.Y. Sup., Queens County).

of TSRI, and its controller, Tajuddin Haslani; and (3) defendant QAR Industries, Inc. ("QAR"), a company which describes itself as involved in corporate turnarounds, and its controller, Robert Fitzgerald. The Zeff Group members presently hold 48.8% of TSRI's shares, which provides them considerable fiduciary power over TSRI-- any corporate proposal they put up for a proxy vote will undoubtedly pass, regardless of that proposal's fairness. As a fiduciary control group, however, the Zeff Group is required to act with entire fairness—an obligation its members are attempting to evade.

3.     In the New York state action, Plaintiff Paskowitz questioned the Zeff Group's veracity in denying that its members were acting in concert as a group; concealing their plans for TSRI; and putting forth self-interested proxy proposals whose adoption would benefit them, while disadvantaging TSRI's minority's shareholders.[2]

4.     The Zeff Group members have concealed and denied group status, despite an admission in one writing that they are partners, and despite the numerous actions they have taken in concert, including the simultaneous purchase in July 2018 of a controlling interest in TSRI. There is a strong inference that the Zeff Group's concealment of its group status is motivated by: (a) a desire to evade the federal

---

[2] The state court action is in its earliest stages and has not proceeded into discovery pending developments in related litigation.

disclosure requirements imposed upon activist investor groups, which require frank discussion of the group's existence; its activities; and it goals and its plans with regard to the "target" company (here, TSRI); and (b) a desire to evade the fiduciary duties imposed upon groups which have the power to control important corporate decisions and determine the outcome of shareholder votes.

5.     The second litigation involving some of the parties at bar was initiated in Delaware by TSRI's rival, defendant Fintech (the "Delaware Action").[3]  In that case, Fintech seeks to undo certain defensive measures adopted by TSRI, whose Board asserts it is involved in enhancing shareholder value in ways that do not involve capitulating to the Zeff Group.  In the past year, no member of the Zeff Group has made a *bona fide* offer to acquire all of the TSRI shares.  Instead, they seek control through the proxy process, while offering little to assuage minority shareholder fears that they are acting purely in their own self-interest.  In the Delaware Action, Fintech has not admitted: (a) the existence of the Zeff Group; or (b) its prior efforts to take control of TSRI and its present intention to do so.  It has also not frankly explained why (if the defensive measures are removed) its intended actions will be in the best interests TSRI's minority shareholders.  That Delaware action has not yet proceeded into discovery.  Plaintiff Paskowitz filed her own action

---

[3] That case is *Fintech Consulting, LLC v. TSR, Inc. et al.*, C.A. No. 2018-0792-JTL (Del. Ch.).

in Delaware, expressing her particular views of the defensive measures, supporting some, and not supporting others.

6.     Most recently, TSRI filed an action in this Court, also challenging the actions of the Zeff Group.[4]  TSRI complains, correctly, that the Zeff Group has violated the federal disclosure laws by concealing group status, and the group's activities and intentions.  Plaintiff herein similarly alleges that, until the Zeff Group comes clean and discloses its existence and its true intentions regarding TSRI, its members should be enjoined from voting their shares, and any proxies they have received.[5]

7.     The current situation flows from the following key events:

(a)     In May 2017, Zeff made an offer to buy TSRI at $6.15 per share;

(b)     At the end of May 2017, that offer was rejected as inadequate by the TSRI Board, which was then led by the Company's founder Joseph Hughes, a long-time CEO who was then past 80 years of age and nearing retirement;

(c)     On or about June 30, 2017, Joseph Hughes announced his intent to retire and to resign from his positions as President, CEO, and Chairman, among

---

[4]  That action is *TSR, Inc. v. Zeff Capital Holding, LP,* et al., 1:18-cv-12124-KPF (S.D.N.Y.).

[5]     As discussed *infra*, Plaintiff Paskowitz's view at to what must be disclosed in any corrected Zeff Group proxy is broader than what TSRI has asked to be disclosed.

other positions. Joseph Hughes and his wife held TSRI shares totaling 41.8% of the outstanding TSRI shares;

(d)     Given these large shareholdings, Joseph Hughes retained considerable control over TSRI;

(e)     In June 2018, Joseph Hughes, acted through his son, James Hughes, informed TSRI that he wished to sell his shares, either through a sale of the entire company, or otherwise;

(f)     TSRI, in response, formed a Special Committee to evaluate its strategic options, including a premium sale of all shares;

(g)     The Zeff Group, without publicly revealing itself as a group, proposed a transaction whereby the minority shareholders would be left in the cold, but Fintech would acquire working control of the company;

(h)     TSRI's CEO, Chris Hughes, who had succeeded his father in that position, rejected Fintech's overture citing, among other things, the allegedly poor reputation of Fintech's principal, Mr. Haslani;

(i)     Thus, the Fintech-suggested transaction was not pursued;

(j)     Not to be dissuaded, Fintech and the other members of the Zeff Group proposed to Joseph Hughes that they would purchase all of his shares at $6.25, and imposed a short time deadline to close the purchase transaction;

(k)     At the end of July 2018, Joseph Hughes sold his shares to the Zeff Group, who had described themselves to him as "partners";

(l)     The Zeff Group then began to apply pressure to TSRI, increasingly criticizing management;

(m)     The TSRI Board (belatedly, in the view of Plaintiff Paskowitz) adopted enhanced anti-takeover measures, including a "poison pill" that would block the Zeff Group members from further increasing ownership, which had risen to 48.8%;[6]

(n)     The Zeff Group then launched a coordinated three-pronged attack designed to pressure TSRI, including: (i) Zeff (pretending not to be part of a group) filing a proxy statement (the "Zeff Proxy") seeking two Board seats for its nominees, and to weaken or dismantle certain Board enacted defensive measures; (ii) Fintech filing the Delaware litigation, seeking to void certain other TSRI defensive measures; and (iii) QAR making a sham premium bid for TSRI's shares, with a deadline was so short that it expired practically at the same time the Company received it, never to be renewed;

---

[6] A "Poison Pill" halts efforts to acquire more company shares by outsiders, by attaching negative economic consequences to such purchases. A Poison Pill can protect the public shareholders, when it is designed to (as here) prevent a "relatively small group of activist investors to achieve control, *without paying a premium…*" *Third Point Ltd. Liab. Co. v. Ruprecht,* Nos. 9469-VCP, 9497-VCP, 9508-VCP, 2014 Del. Ch. LEXIS 64, at *68 (Ch. May 2, 2014)(emphasis added).

(o)    the Zeff Proxy, which remains outstanding, is materially false, misleading, omissive, and designed to mislead the public  shareholders into believing that dismantling or weakening various Board enacted protections would help them; and

(p)    On December 7, 2018, the Company issued a press release providing an update on the strategic alternatives process being conducted by the Special Committee.  It said: "After careful consideration, and based upon the unanimous recommendation of the Special Committee, the Board decided that it is in the best interests of the Company and its stockholders to pursue one or more strategic acquisitions."

8.    The annual meeting of shareholders must take place in 2019.  When it does, the Zeff Proxy (which in reality is issued by the Zeff Group) must  comply with Section 14(a) of the Securities Exchange Act of 1934, 15 USC Sect. 78n(a), and frankly detail the material history of the Zeff Group's activities, and related matters.

9.    It appears that as early as May 2017, the Zeff Group formed a group with a secret plan to seize control of TSRI.  One of the architects of the scheme was defendant Tajuddin Haslani, the managing member of Fintech, a competitor of TSRI with a history of poaching TSRI's employees and clients.  TSRI has alleged that Haslani has gained notoriety with industry insiders for his questionable business

practices and finances. He has been involved in heated legal disputes with business partners, which raise serious concerns about Haslani's ability to manage a public company and to deliver value to its stockholders. In addition, TSRI has alleged that TSRI employees would not want to work with a company run by this Defendant. Haslani has expressed his wish to combine TSRI and Fintech, with Haslani running the combined company. He has taken pains to conceal this plan. As part of this scheme, Haslani's Fintech, along with Zeff and QAR purchased the controlling block of shares from Joseph Hughes. In the aggregate, Fintech and Haslani now beneficially own approximately 376,100 shares of TSR's Common Stock, which amounts to approximately 19.2% of TSR's equity. (QAR owns 7.1%, and Zeff, 22.3%).

10. TSRI has also alleged that Zeff Capital, another participant in the scheme, has attempted takeovers of numerous companies, but in each case either declined to complete an acquisition or made an offer that was deemed inadequate by the target company. In a letter obtained by TSRI and then filed with the SEC, the members of the Zeff Group explicitly admit that they were working as "partners."

11. TSRI has alleged that Haslani made numerous representations to TSRI's customers, employees, and management that he and his affiliates had taken over the Company or such a takeover was imminent. Yet the Zeff Group has never

disclosed to TSRI's public stockholders its existence or its intentions for the Company.

12.     The Zeff Group's federal filings fail to disclose, among other things, that they are surreptitiously working as a group to take over the Company, that their interests directly conflict with those of public shareholders, and that they may well deliver managerial control of the Company to Haslani with the intent that TSRI eventually be combined with his company Fintech or an affiliated entity. Should they succeed, the Zeff Group's plans might well have a devastating financial impact on the Company.

13.     TSRI has publicly stated that several of TSRI's most significant clients would not do business with TSRI if Haslani is involved in any way with the management of the Company, and key employees who hold valuable customer relationships have similarly made clear their refusal to work with Haslani. Additionally, the Company has publicly disclosed that potential transactional partners have stated that they are unwilling to consider any potential transaction with TSRI if Haslani is involved.

14.     Based on these events, the Court should exercise its equitable authority to prevent substantial, immediate, and irreparable harm to TSRI's stockholders. This Court can prevent such harm flowing from both the Zeff proxy, and from its disloyal proxy proposals.

15.     As to the Zeff Proxy, it is false, misleading and omissive in the following ways:

(a)     It does not disclose the existence of the Zeff Group, and that group's activities, plans and ultimate goals;

(b)     It does not disclose the existence of the Fintech Litigation, or its goal, which is to unable Fintech and other members of the Zeff Group to buy TSRI shares via a "street sweep" at an unfair price;

(c)     It does not disclose what it believes the true value of the Company to be; and

(d)     It discloses nothing material about the Zeff Group's history, including any relevant  financial history of its members.

16.     Moreover, the Zeff Proxy states that Zeff is nominating for directorships two highly qualified candidates:

> the Zeff Group *has nominated two experienced and respected     individuals* who they believe would each, consistent with the best interests of the Company, work to help improve the Company's operations and corporate governance. The Zeff Group believes that these improvements will result in increased stockholder value. *The Zeff Group believes that the Nominees have excellent qualifications and will bring insightful and experienced voices to the Board.*

17.     Zeff cannot believe this about nominee Tim Eriksen. The Zeff Proxy states:

***Mr. Eriksen is the Chief Executive Officer and Chief Financial Officer of, and since July 2015 has been a director of, Solitron Devices, Inc. ("Solitron").*** Solitron designs, develops, manufactures and markets solid-state semiconductor components and related devices primarily for the military and aerospace markets.

18.    Mr. Eriksen is grossly unqualified, and Zeff Group knows this.  Prior to Solitron Devices, he had zero managerial experience and he is only the part time CEO of Solitron Devices, a company that has fallen into a near-bankrupt state during Mr. Eriksen's tenure.   Solitron has failed for years to file required annual and quarterly reports with the SEC.  Nor does it hold annual shareholder's meetings as required under Delaware law.  TSRI is also approximately 15 times larger than Solitron.  Zeff is not inexperienced or naïve—Mr. Eriksen is in no way qualified to help TSRI.  His only appeal is that he will most likely be a pawn of Zeff Group.  In sum, Zeff is blatantly misrepresenting the facts when it says Mr. Eriksen has "excellent qualifications."   His managerial resume bespeaks only gross failure, including failure to comply with SEC rules and regulations.

19.    As to Zeff's second nominee, Mr. Bradley Tirpak, he allegedly disseminated false information while at Credit Suisse, so as to cause a company's stock to fall, enriching his employer which had sold the shares short.  This was enough for Judge Koeltl of this District to uphold securities fraud claims against

Tirpak.[7]  In another case, Tirpak was found on a motion for a preliminary injunction to have purposely violated a corporate agreement.[8]  In addition, Mr. Tirpak, acting on behalf of a company called Access Telecom, filed a claim to recover a large sum out of a receivership fund created by the SEC.  The fund was for investors in the defunct investment fund Merrill Scott.  While Access Telecom had some dealings with Merrill Scott, it was not an investor.  Tirpak's claim was denied, due to "the fact that Access Telecom has presented *no evidence* that it purchased an investment product from Merrill Scott."[9]  In sum, Tirpak was trying to collect on an unjustified claim.

20.     These facts would be material to TSRI investors, who have been told the nominees have "excellent qualifications."

21.     Finally, Zeff's proposals—to the extent they seek to remove or weaken protective devices that have been put in place by the TSRI Board so that the Zeff Group can take over without paying a fair price—must be struck, as they conflict with Zeff Group's fiduciary duty to  the minority holders and in certain cases

---

[7]  *In re Credit Suisse First Bos. Corp. Sec. Litig.,* 97 Civ. 4760 (JGK), 1998 U.S. Dist. LEXIS 16560 (S.D.N.Y. Oct. 19, 1998).

[8]  *USA Techs., Inc. v. Tirpak,* No. 12-2399, 2012 U.S. Dist. LEXIS 72318, at *36 (E.D. Pa. May 24, 2012).

[9]  *SEC v. Merrill Scott & Assocs.,* No. 2:02-CV-39-TC, 2008 U.S. Dist. LEXIS 53792, at *7-8 (D. Utah July 15, 2008).

violative of Delaware law.. As to these matters, Plaintiff seeks declaratory and injunctive relief under state law.

## JURISDICTION AND VENUE

22.     This action arises under Section 14(a) of the Exchange Act, 15 U.S.C. §78n(a) and the applicable rules and regulations of the SEC, including SEC Rule 14a-9. This Court has jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa. The acts complained of below have been carried out by use of the means and instrumentalities of interstate commerce. This Court also has subject matter jurisdiction over the pendent state law claims asserted herein pursuant to 28 U.S.C. §1367 (supplemental jurisdiction), since this statute provides that the district court has supplemental jurisdiction over all other claims where, as here, they are so related to claims in the action within the original jurisdiction of the Court, that they form part of the same case or controversy.

23.     Venue in this District is proper under Section 27 of the Exchange Act, 15 U.S.C. § 78aa. The acts and transactions complained of below have occurred and continue to take place in this District. Among other things, The Zeff Group materially misleading proxy solicitation materials were: (i) transmitted by Defendant Zeff Capital, whose headquarters and principal place of business is in this District; and (ii) filed with the SEC in anticipation and for the purpose of their distribution to

TSRI's stockholders, including stockholders located within this District, in order to obtain proxies to be used at TSRI's upcoming Annual Meeting.

## THE PARTIES

24.     Plaintiff Susan Paskowitz is a shareholder of 300 shares of TSRI stock and has been so since June 2017.

25.     TSRI, Inc., the plaintiff in the related action in this District, is a corporation organized under the laws of the State of Delaware, with a principal place of business at 400 Oser Avenue, Suite 150, Hauppauge, New York. TSRI is primarily engaged in the business of providing contract computer programming services to its customers. TSRI supplies technical staff, who generally supplement the in-house capabilities of TSRI's customers, for projects that typically range from three months to one year.  TSRI had 56 customers as of May 31, 2018, the end of TSRI's most recent fiscal year, primarily Fortune 1000 companies located in the New York metropolitan area, New England, and the Mid-Atlantic region. TSRI provides its services principally through offices located in New York, New York, Edison, New Jersey, and Long Island, New York.

26.     Defendant Zeff Capital, L.P. is a limited partnership organized under the laws of the State of Delaware, with a principal place of business at 885 Sixth Avenue, New York, New York.  Zeff Capital, L.P was founded in 2009 and describes itself as a highly selective "Value Investment Fund."

27.     Defendant Zeff Holding Company, LLC is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 885 Sixth Avenue, New York, New York. It is the general partner of Zeff Capital, L.P.

28.     Defendant Daniel Zeff is the managing member of Zeff Capital, L.P., the manager of Zeff Holding Company LLC, and has his principal place of business in New York, New York.

29.     Defendant QAR Industries, Inc. is a corporation organized under the laws of the State of Texas, with a principal place of business at 101 SE 25th Avenue, Mineral Wells, Texas.  Among other things, it describes itself as providing debt and equity capital through affiliated investment funds to companies that are at the early or transformative stages of their growth.

30.     Defendant Robert Fitzgerald is the president and a director of QAR, and has his principal place of business in Mineral Wells, Texas.

31.     Defendant Fintech Consulting LLC d/b/a ApTask is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 120 South Wood Avenue, Suite 300, Iselin, New Jersey.  Fintech is a provider of IT staffing and related services to its customers, and is a direct competitor of TSRI.

32.     Defendant Tajuddin Haslani is the managing member of Fintech, and has his principal place of business in Iselin, New Jersey.

## BACKGROUND

### A.     Zeff's Takeover Attempt in 2017

33.     For many years, TSRI was managed by Joseph Hughes, who served as its President, CEO, and Chairman.  Together with his wife, Winifred Hughes, Joseph Hughes owned approximately 41.8% of the Company's common stock prior to the events that form the basis for this complaint.  Prior to July 2018, TSRI's Board had five members serving staggered terms in three classes.

34.     On May 18, 2017, TSRI's Board received a letter from Zeff Capital, L.P., which at the time purported to own 140,627 shares or approximately 7.2% of TSRI common stock.  Zeff Capital, L.P. expressed its interest in acquiring all of TSRI's outstanding shares of common stock not owned by Zeff Capital, L.P. or its affiliates for $6.15 per share in cash.  On the same day, Zeff Capital, L.P. together with its affiliates Zeff Holding Company, LLC and Daniel Zeff, filed a Schedule 13D disclosing its interest in acquiring all of TSRI's outstanding common stock. Zeff Capital did not disclose to the Board or in its Schedule 13D the identity of any other persons with whom it was acting.

35.     The Company has alleged that around the same time, Haslani of Fintech made inquiries of one or more Company clients regarding whether they would be

willing to do business with him if *he* purchased a public company that they used as a vendor, and was informed that the answer was no.

36.     On May 30, 2017, Joseph Hughes replied to Zeff Capital's letter, informing it that the Board had determined it would not pursue Zeff Capital's proposal, and that it was in the best interests of the Company and its stockholders to remain independent and to continue to execute the Company's business plans on a standalone basis.  TSRI announced this decision in a press release issued on the same day.

37.     Zeff Capital responded to the letter on June 12, 2017.  Among other things, Zeff Capital disclosed that it had received notifications of interest in acquiring TSRI from multiple third parties, and that while it would not be pursuing a transaction with the Company at the time, it would reconsider its options, either alone or with a third party, if circumstances changed:

> [Zeff Capital] was very disappointed by the Company's response as we continue to believe that a change in control and management could unlock far greater value in the Company for all shareholders. However, given the recent stock price increase, and the Company's reluctance to enter into negotiations with us, [Zeff] Capital will not be pursuing the Proposal or a similar transaction at this time. If circumstances or prices change the Reporting Persons will reconsider whether to pursue any such transaction, *either alone or with a third party.*

> [Zeff] Capital still believes the company should engage an investment bank to enhance long term shareholder value.  Subsequent to the May 17 Letter, *multiple third parties ("Third Parties") contacted Zeff Capital, LP and expressed potential interest in acquiring the Company (either with Zeff Capital or in an independent transaction).* [Zeff]

Capital communicated this information to the Company's management and its board of directors on June 9, 2017, and reiterated the Reporting Persons' view that the Company should pursue strategic alternatives (including a sale of the Company). . . .

The Reporting Persons reserve the right to pursue all other options necessary to protect, or maximize the value of, Capital's investment in the Company, including, but not limited to . . . *seek[ing] to facilitate transactions involving Third Parties that may result in a change in control of the Company.* (emphasis added.)

38.    On or about June 30, 2017, Joseph Hughes announced his intent to retire and to resign from his positions as President, CEO, and Chairman, among other positions, effective July 5, 2017.  One of his sons, Christopher Hughes, who had previously served as Senior Vice President at the Company and had worked at the Company for approximately 32 years, succeeded Joseph Hughes as President, CEO, and Chairman.

### B.    The Zeff Group Renews Its Plan to Take Control of TSRI

39.    On June 18, 2018, James Hughes, Christopher Hughes' brother, informed Christopher Hughes that his parents were interested in selling their shares to TSRI, Christopher Hughes and/or other executive officers of TSRI.    James Hughes also expressed that his parents wanted to engage an investment banker to explore a potential sale of their shares or the Company as a whole.  James Hughes said he was acting as an attorney in fact for Joseph Hughes and Winifred Hughes.

40.    James Hughes next sent a letter to the Board requesting that the Board immediately pursue a sale of the Company:

Joseph F. Hughes & Winifred M. Hughes (JFH & WMH) have asked me (James Hughes) to dispose of their 819,000 shares of TSRI, Inc. ("TSRI") common stock which represents approximately 41.8% of the outstanding shares of TSRI, Inc.

At Friday's closing price of $4.60 per share, TSRI's stock is trading at a price that does not accurately reflect it's [sic] true value. The reported sales and earnings for the first nine months of the fiscal year ending May 31, 2018 are a disappointment.

I ask that you immediately pursue a sale of TSRI. I believe that while the Board needs to conduct an appropriate process in evaluating my request to sell the company, time is of the essence and your prompt consideration of this proposal is requested.

41.    On June 26, 2018, the Board issued a press release regarding its receipt of Chris Hughes letter.

42.    On June 26, 2018, Haslani emailed his attorney stating,

TSRI is in the news and in the past we had tried to acquire them with not much success . . . .

 Can you draft an email and can you send it to Chris Hughes?

I want him to offer that we buy 41.8% of the stock of TSRI and he can run the company and ApTask will provide the backoffice and recruitment support to TSRI.

I can be the chairman of the board and control 41% of the seat/voting rights and he can be the CEO.

TSRI will run independently and eventually we will reverse merge ApTask in TSRI at a later date.

We will just need to renegotiate Chris's employment agreement. Atleast [sic] ask him for a meeting for us to meet.

Please call me for better clarity. (emphasis added.)

20

43.     TSRI has alleged that between June 26 and 27, 2018, employees also received numerous communications from former TSRI employees who were now working for Fintech indicating that they believed Fintech would be acquiring TSRI. News of that meeting spread among TSRI employees, who became seriously concerned and expressed that they would not work for Fintech's Haslani.

44.     On June 29, 2018, Christopher Hughes met with Haslani. Haslani informed Christopher Hughes that upon acquiring TSRI, Hughes would report to him. Haslani also stated that he would fire TSRI's recruiting and accounting staff and move those functions to India. Christopher Hughes responded that such a business model would not work for TSRI's clients, and that the Company's employees did not wish to work for Haslani. Christopher Hughes also informed Haslani that based on feedback from TSRI's clients, they would cease doing business with TSRI if Haslani assumed control of the Company. Haslani blithely responded that employees and clients and the revenue those clients generated could somehow be replaced, and that he would not be deterred from acquiring the Company.

## C.     The Zeff Group Acquires The Hughes Stake

45.     On July 9, 2018, the Board passed resolutions establishing a Special Committee of the Board ("Special Committee") to, among other things, act upon Joseph and Winifred Hughes' request that the Board pursue a sale of TSRI. The

Special Committee was authorized to review, consider, and evaluate other strategic alternatives available to the Company, including: (a) potential opportunities for a sale of TSRI by way of merger, consolidation, sale of equity securities (including the Company's outstanding common stock), sale of all or substantially all of the Company's assets, or other strategic transactions such as acquisitions; (b) recapitalization of the Company; (c) the sale or exchange of the shares of common stock held by Joseph and Winifred Hughes in a transaction involving the Company; or (d) remaining independent and continuing to execute TSRI's business plans on a standalone basis. The Special Committee was empowered to review, consider, and evaluate, for purposes of advising the full Board, whether any of the potential strategic alternatives was in the best interests of TSRI's stockholders. The Special Committee was also empowered by the Board to hire, at TSRI's expense, legal, financial, and public relations advisors to assist it in the performance of its duties.

46.     Raymond A. Roel and Brian J. Mangan, claimed independent directors of TSRI, were appointed by the Board to serve on the Special Committee.

47.     On July 16, 2018, James Hughes notified the Special Committee that he had received a letter of interest from Zeff Capital on behalf of a group consisting of Zeff Capital, QAR, and Fintech:

> I have received a letter. . . this afternoon, July 16, 2018 *from a group* consisting of Zeff Capital, LP, QAR Industries, Inc. and Fintech Consulting LLC. The group has offered [sic] buy 819,000 shares of TSRI, Inc. ("TSRI") common stock currently owned by Joseph F.

Hughes & Winifred M. Hughes which represents approximately 41.8% of the outstanding shares of TSRI, Inc. for a price of $6.25 per share.

The offer from Zeff Capital, LP, QAR Industries, Inc. and Fintech Consulting LLC is currently being evaluated. (emphasis added).

48.     The letter from Zeff Capital explicitly acknowledged that it was acting in a group with QAR and Fintech to acquire TSRI securities:

> *Zeff Capital L.P, ("Zeff Capital"), together with its partners QAR Industries, Inc. and Fintech Consulting LLC*, is pleased to inform you of our interest in acquiring the 819,000 shares of common stock of TSRI, Inc. ("TSRI") owned by Joseph and Winifred Hughes, for $6.25 per share in cash.
>
> This proposal represents a premium of approximately 36% over the closing price on June 22, 2018, the last trading day prior to your offer to sell the shares. Zeff Capital is one of the largest outside shareholders of TSRI and currently owns 77,615 shares of the company's common stock, which represents approximately 4.0% of TSRI's outstanding stock.
>
> As we have expressed, we are very interested in quickly closing a purchase of your shares. Financing for the transaction is in place for the full amount payable in cash. We would like to complete the share purchase as soon as possible and look forward to your timely response. (emphasis added).

49.     On July 20, 2018, Joseph and Winifred Hughes entered into a Share Purchase Agreement with Zeff Capital, QAR, and Fintech (with Defendant James Hughes acting as their attorney in fact), pursuant to which they sold their interests in TSRI to the Zeff Group under the terms outlined in the Zeff Group's July 16 letter.

The transaction closed on July 23, 2018, and soon the Zeff Group with some additional purchases became the owner of nearly 50% of TSRI's common stock.

50.     On July 25, 2018, the Company filed a Current Report on Form 8-K with the SEC disclosing that it believed a *change in control* of the Company had occurred as a result of the Hughes' sale of their ownership interest to the Zeff Group because the Hughes parents had been the controlling stockholders of TSRI.

51.     TSRI's conclusion regarding a "change in control" is correct.  While Zeff Group does not yet control the Board, it soon will be able to do so, indeed within about a year. More importantly, it can effectively block the sale of the Company, and can exercise a veto over the many types of corporate transactions that require a majority or super-majority vote.  In sum, the Zeff Group has inherited great influence and the fiduciary duties formerly held by Joseph Hughes.

52.     Notwithstanding the transfer of Joseph and Winifred Hughes' interest to the Zeff Group, the Special Committee continued to explore strategic alternatives that it stated would maximize value for all of TSRI's stockholders.

### D. Defendants Filed False and Misleading Schedule 13Ds[10]

53.     Section 13(d)(1) of the Exchange Act requires that any person acquiring beneficial ownership of more than five percent of an issuer's common stock disclose within 10 days of the acquisition certain information to the issuer, the SEC, and the exchanges on which the stock is traded.  This requirement was triggered when the Zeff Group acquired 41.8% of TSRI common stock.   Section 13(d)(3) of the Exchange Act and the accompanying SEC rules make clear that when two or more persons act as a group for the purpose of acquiring, holding, voting, or disposing of securities of an issuer, that group shall be deemed a "person" for the purposes of Section 13(d)(1)'s disclosure requirements.

54.     Among other things, Section 13(d)(1) requires disclosure of the following:

> (A) the background, and identity, residence, and citizenship of, and the nature of such beneficial ownership by, such person and all other persons by whom or on whose behalf the purchases have been or are to be effected; . . .

> (C) if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure; . . .

---

[10] TSRI is acting to seek correction of these filings in the related action, *TSR, Inc. v. Zeff Capital, LP, et al.*, 1:18-CV-12125 (KPF).  Plaintiff herein believes these filings should be corrected, but has limited the relief sought in this Complaint to proxy voting issues, and matters related to the Hughes Sale.  Plaintiff's view of what should be disclosed in a corrected Proxy is somewhat broader than the view taken by TSRI.

(E) information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to transfer of any of the securities, joint ventures, loan or option arrangements, puts or calls, guaranties of loans, guaranties against loss or guaranties of profits, division of losses or profits, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof.

55. On July 26, 2018, Zeff Capital filed a Schedule 13D relating to TSRI. Fintech and QAR followed suit on July 30, 2018. These separate filings represented that: (i) Zeff Capital and affiliated reporting persons, including Daniel Zeff, had acquired an aggregate of 382,094 shares or 19.5% of TSRI common stock; (ii) QAR and affiliated reporting person Fitzgerald had acquired an aggregate of 139,200 shares or 7.1% of TSRI common stock; and (iii) Fintech and affiliated reporting person Haslani had acquired 376,000 or 19.2% of TSRI common stock.

56. The Zeff Group's Schedule 13D filings are materially false and misleading because, among other reasons, they fail to disclose the existence of the Zeff Group, the identity of all of its members, any information concerning the Zeff Group's plans for TSRI, and any arrangements with respect to any securities of TSRI.

57. None of the members of the Zeff Group list the other members under Item 2 of their Schedule 13D filings, which is the place for required disclosure of the existence of a group. Such omissions are false and misleading because they fail

to disclose that the members of the Zeff Group are acting in concert for the purpose of acquiring, holding, voting, and/or disposing of securities of TSRI.

58.    The information provided under Item 4 of the Zeff Group's Schedule 13D filings is materially false and misleading because it fails to disclose the purpose of the Zeff Group, and its members' plans and proposals regarding the management, structure, and/or business operations of the Company.  The Zeff Group members submitted identical generic disclosures, reserving their rights to engage in the full range of corporate actions enumerated under Items 4(a)-(j). These disclosures, which have never been amended, are false and misleading because the Zeff Group acquired the Hughes's ownership interest with the specific intent to take control of TSRI, a fact that the Zeff Group members have never disclosed.

59.    The information provided under item 6 of the Zeff Group's Schedule 13D filings is materially false and misleading because these Schedules each state that to the knowledge of the Reporting Persons, there are no contracts, arrangements, understandings or relationships (legal or otherwise) among the Reporting Persons or between the Reporting Persons and any other persons with respect to any securities of the Issuer, including but not limited to transfer or voting of any of the securities, finder's fees, joint ventures, loan or option arrangements, puts or calls, guarantees of profits, division of profits or loss, or the giving or withholding of proxies.

60.    The Zeff Group also failed to disclose or to attach its Share Purchase Agreement with Joseph and Winifred Hughes, to provide any details about the terms and conditions of that agreement, or to describe any other agreements, arrangements, or understandings with one another to vote and/or otherwise exercise the rights pertaining to the shares acquired from the Hughes.

**E.    The Board Enacts Defensive Measures**

61.    On July 27, 2018, the Board voted to increase the number of directors from five to seven members and to apportion the new directorships to Class II and Class III directorships.  The Board approved the appointment of Joseph Pennacchio as a Class II member of the Board, for a term to expire upon the expiration of the term of Class II directors in 2020 or until his successor is elected and qualifies.  The Board approved the appointment of William Kelly as a Class III director for a term to expire upon the expiration of the term of Class III directors in 2019 or until his successor is elected and qualifies.

62.    Prior to the July 27, 2018 Board meeting, someone with knowledge about TSRI's internal operations alerted Daniel Zeff about the meeting.  Daniel Zeff then called multiple Board members to try to stop the Board from taking those actions.  The Zeff Group viewed the expansion of the Board as a significant obstacle to its takeover attempt.

63.     On August 7, 2018, it has been alleged that Christopher Hughes met with Daniel Zeff.  Zeff related his displeasure at the Board's recent actions, asked for Board seats, and requested information with the apparent intention of pursuing a transaction with the Company.  Hughes responded that he was unwilling to provide Company information without assurances that it would not fall into the hands of a competitor, and the two of them discussed entering into a confidentiality agreement containing a standstill provision, which would have provided the Board with more control over any takeover attempt by the Zeff Group and enhanced the Board's ability to secure a better deal for other TSRI stockholders.  Hughes also informed Zeff that Haslani would be detrimental to the Company, and Zeff responded that Haslani's involvement could be kept in the background.

64.     On August 16, 2018, it has been alleged that Christopher Hughes sent a draft of the confidentiality/standstill agreement to Zeff.  Rather than pursuing the agreement, the Company claims that Zeff took hostile actions that clearly demonstrated the Zeff Group's intent to gain control of the Company by pursuing a surreptitious, creeping takeover, circumventing the provisions of the Williams Act.

65.     Between August 21 and August 23, 2018, Zeff Capital acquired an additional 55,680 shares of TSRI common stock on the open market, bringing its aggregate ownership to 437,774 shares or approximately 22.3% of TSRI's common stock.

66.     Between August 21 and August 27, 2018, Defendant Robert Fitzgerald acquired an additional 4,070 shares of TSRI common stock, bringing QAR's aggregate ownership to 143,270 shares or approximately 7.3% of TSRI's common stock.

67.     QAR and Zeff made coordinated purchases of common stock on August 21, 2018, constituting a street sweep.

68.     On August 23, 2018, Zeff Capital, L.P. and its affiliated reporting persons (but not the other members of the Zeff Group) filed an amendment to its Schedule 13D, which failed to disclose the existence of the Zeff Group or its plans to take over TSRI.  Remarkably, Zeff Capital pretended that its interests were still aligned with those of other stockholders.  It criticized the Board's recent actions, which also included renegotiating the terms of Christopher Hughes' employment contract, as appearing "to have no rational business purpose and serve only to entrench the Board and further enrich management at the expense of shareholders." Zeff Capital's letter concluded with a vague threat to "hold the Board accountable for its legacy of failed decisions."

69.     On the same day, Zeff informed Christopher Hughes that he was no longer interested in signing a confidentiality/standstill agreement.

70.     On August 28, 2018, QAR and its affiliated reporting person filed an amendment to its Schedule 13D, which similarly failed to cure any of the

deficiencies in its July 30 Schedule 13D filing. The filing attached a letter QAR sent to the Board on August 27, 2018, which, like Zeff Capital's, disingenuously purported to express concerns regarding whether the Board's recent actions were in the best interests of TSRI's stockholders.  The letter quoted at length from Zeff Capital's May 17, 2017 letter to the Board, and acknowledged that QAR, Zeff Capital, and Fintech recently purchased the shares held by Joseph and Winifred Hughes.  However, QAR did not disclose that it was continuing to act as part of a group with Zeff Capital and Fintech to seize control of TSRI.

71.   By August 27, 2018, defendants had acquired *approximately 48.8% of TSRI common stock combined*.  TSRI faced the imminent threat of the Zeff Group obtaining a majority interest and reconstituting the Board without paying the other stockholders a premium for such control.  The ability to reconstitute the Board would have also provided the Zeff Group with the ability to appoint members to the Special Committee that served their interests and/or to reject any proposed transactions that would have preserved value for TSRI's minority stockholders (but failed to enrich Zeff Group members).

72.   On August 27, 2018, the Board amended TSRI's bylaws to prevent stockholders from calling a special meeting of the stockholders without the approval of the majority of the Board.

73.     On August 29, 2018, based on the recommendation of the Special Committee, the Board adopted a Rights Agreement and declared a dividend of one preferred share purchase right for each share of Common Stock to the stockholders of record on that date.  The Rights Agreement was claimed by the Company to have been adopted to protect the Company and its stockholders from the actions of third parties that the Special Committee and the Board determine are not in the best interests of the Company and its stockholders; to enable all of TSRI's stockholders to realize the full potential value of their investment in the Company; and to reduce the likelihood that any person or group could gain control of TSRI through open market accumulation or other tactics, like the unlawful creeping takeover tactics defendants are attempting to use here.

74.     The Board informed stockholders that the Rights Agreement was intended to provide the Special Committee and the Board with time to make informed decisions that are in the best long-term interests of the Company and its stockholders, and that it was not intended to interfere with any sale, merger, tender, or exchange offer or other business combination approved by the Board, nor to deter the Special Committee from considering any offer that is fair and in the best interests of the Company and its stockholders.

75.     On August 31, 2018, Fintech submitted a letter like the ones previously submitted by its fellow Zeff Group members, which questioned the Board's actions.

Fintech failed to file an amendment to its Schedule 13D indicating that the letter had been sent to the Board, and failed to disclose the existence of the Zeff Group or its plans to take over the Company.

76.    On September 12, 2018, the Company filed a Current Report on Form 8- K, which included letters from Christopher Hughes and Special Committee member Raymond Roel, who also served as Chairman of the Compensation Committee, responding to the questions raised in QAR's and Fintech's letters.

77.    On September 19, 2018, Zeff Capital filed an amended Schedule 13D attaching yet another letter questioning whether the Board's actions were in the best interests of TSRI stockholders, as well as "the Board's commitment to required transparency," while failing to disclose the existence of the Zeff Group or its intent to seize control of TSRI.

**F.    The Zeff Group's False and Misleading Proxy Campaign**

78.    On September 27, 2018, TSRI filed a definitive proxy statement announcing that the Annual Meeting would be held on November 28, 2018 to consider and to: (i) elect two Class I directors, Ira D. Cohen and Raymond A. Roel; (ii) ratify the appointment of Cohn Reznick LLP as the independent registered public accountants of the Company to audit and report on its consolidated financial statements for the fiscal year ending May 31, 2019; and (iii) to transact such other

business as may properly come before the Annual Meeting or any adjournment of the meeting.

79.     The Company's proxy statement also informed TSRI stockholders that it believed a change in control of TSRI had occurred based on the stock acquisitions by Zeff Capital, QAR, and Fintech, and that defendants had yet to file a Schedule 13D stating that they were acting as a group.

80.     On October 10, 2018, Zeff Capital filed proxy soliciting materials and a Schedule 13D amendment.  These filings announced Zeff Capital's intent to nominate its own slate of Class I director candidates, Brad Tirpak and H. Timothy Eriksen, for election to the Board at the upcoming Annual Meeting.  Zeff Capital announced that it also intended to present a stockholder proposal to declassify the Board, which would require all directors to be up for election on a yearly basis, as well as two proposals relating to TSRI's by-laws.

81.     Zeff Capital filed the preliminary Zeff Proxy on October 17, 2018, which clarified that its proposals relating to TSRI's bylaws were to specify that the number of directors that constitute the whole Board may be increased only with the approval of at least 80 percent of the authorized directors, and to repeal any amendments to the by-laws adopted by the Board without the approval of stockholders after August 27, 2018, and prior to the effectiveness of the resolution

effecting such repeal. Zeff Capital amended its preliminary proxy statement on October 30, 2018.

82.    On November 1, 2018, Zeff Capital filed the definitive Zeff Proxy soliciting proxies to elect the directors and approve the resolutions described above. Section 14(a) of the Securities Exchange Act governs the solicitation of proxies. It requires that any person or group soliciting proxies through the mails or any instrumentalities of interstate commerce, whether by a formal proxy statement or otherwise, must file with the SEC a Schedule 14A that discloses, among other things, the number of shares of the issuer that are beneficially owned by that person or group, and information as to any contracts, arrangements, understandings, or relationships entered into by that person or group with any other person with respect to those shares. SEC Rule 14a-9 provides that, "[n]o solicitation subject to this regulation shall be made by means of any proxy statement . . . or any other communication . . . which omits to state any material fact necessary in order to make the statements therein not false and misleading." Solicitations that fail to completely disclose the identity of the soliciting group and their holdings violate such disclosure requirements.

83.    None of Zeff Capital's Schedule 14A filings disclosed that Zeff Capital was working in a group with its partners QAR, Fintech and the controllers of these entities to take control of TSRI, disclose what the Zeff Group planned to do with the

Company after it won control and how the minority public shareholders would be treated. Nor was there any discussion that the Zeff Group was hostile to the current TSRI management and its interests might be deemed hostile to the public shareholders. The Zeff Group has purposefully concealed such information in order to undermine the integrity of the proxy voting process, and to dupe TSRI's stockholders into voting against their own interests. Moreover, the Zeff Proxy presented two director nominees as highly qualified and experienced, whereas one (Eriksen) has a history of managerial disaster and failure to file SEC reports when due (or hold shareholder meetings when required), while the other (Tirpak) has multiple times displayed a lack of candor and integrity. These omissions and misrepresentations constitute material violations of Section 14(a) of the Exchange Act, and Rule 14a-9.

84.    On October 11, 2018, Plaintiff herein, Susan Paskowitz, filed a shareholder class action complaint in New York Supreme Court, Queens County alleging, among other things, that the sale by Joseph and Winifred Hughes of their controlling interest to Zeff Capital, QAR and Fintech was in breach of the Hughes parent's fiduciary duties; that Zeff Capital, QAR, and Fintech are "partners" and constitute a "group"; and that the three aided and benefited the Hughes' conduct.

85.    In response to the filing by Defendant Fintech discussed below, Paskowitz separately commenced an action in the Delaware Court of Chancery

requesting that that court uphold certain Board actions, including the adoption of the Rights Agreement, for the purpose of protecting TSRI's public stockholders.

86.     On November 1, 2018, Fintech filed a complaint in the Delaware Court of Chancery, purporting to be a stockholder derivative lawsuit on behalf of the Company against all current members of the Board. Fintech claimed that the Board breached its fiduciary duties owed to the Company's stockholders by its approval of the alleged anti-takeover measures. In the complaint, Fintech denies the existence of the Zeff Group. While attacking various TSRI Board actions and seeking that the Chancery Court void them, at no time has Fintech made any public offer for the Company.

87.     Fintech's denial of the existence of the Zeff Group is false.   The Company has now publicly disclosed that in recent months Haslani has made numerous representations to several significant TSRI customers, as well as to TSRI's competitors and employees, that he and his affiliates have and/or will take over TSRI, and that their plan is to deliver managerial control of the Company to Haslani, with the intent that TSRI be eventually merged into Fintech or an affiliated entity. None of this information was disclosed in the Zeff Group Proxy; nor has there been disclosure of how the Zeff Group members coordinated their efforts, and divided tasks amongst themselves (*i.e,* Zeff filed a Proxy; QAR made a sham bid, as described *infra* at Paragraph 94; and Fintech sued in Delaware to undo TSRI's

protective measures). Nor has the ZEFF Proxy ever been amended to disclose the existence and goals of the Fintech Delaware litigation.

88.     On November 6, 2018, TSRI issued a press release announcing that the Board had determined to postpone the Annual Meeting originally scheduled to be held on November 28, 2018.  On the same day, Fitzgerald and Haslani separately contacted the Company to relate their displeasure with this decision.  Among other things, Haslani requested Board seats and asked Christopher Hughes what financial incentives he could offer him to swiftly effectuate a change-of-control transaction. Christopher Hughes has asserted that he rejected what he claims to have been an effort to improperly influence him into disregarding the best interests of TSRI's public stockholders.

89.     TSRI has alleged that permitting Haslani and/or his affiliates to assume managerial control would seriously jeopardize TSRI's future financial prospects because the Company has disclosed that key customers have stated that they are unwilling to become involved in any business dealings with Haslani, and because the Company has disclosed that TSRI employees who hold crucial client relationships have stated in no uncertain terms that they are unwilling to work with Haslani.  If Haslani is involved in any way with the management of the Company, the Company has claimed that it would be expected that the Company will lose a significant amount of revenue.

90.     Similarly, the Company has alleged that the Special Committee's efforts to secure a transaction that would maximize value for all TSRI stockholders will be derailed if Haslani and/or his affiliates assume managerial control of the Company.

91.     The Company has also publicly disclosed that potential transactional partners have informed the Special Committee that they are unwilling to make any proposals if the Zeff Group continues to own a significant number of shares of TSRI and/or Haslani is involved with the Company because of Haslani's poor reputation and their concerns regarding Haslani's finances.  One potential partner recalled a previous instance in which Haslani tried to circumvent a board of directors' established process for evaluating potential acquirers and attempted to directly take over a private company from its owner.

92.     The Zeff Group's concealment of the fact that it is working with Haslani and of Haslani's anticipated role in the Company constitute material omissions in the ZEFF Proxy which the Zeff Group had the legal obligation to disclose.  Without such information, TSRI stockholders cannot fairly assess or vote on Zeff Capital's proxy proposals. These material omissions constitute violation of Section 14(a) of the Exchange Act.

93.     On November 14, 2018, QAR sent a letter to the Board offering to purchase the Company's outstanding common stock not already owned by QAR and

its affiliates for a purchase price of $6.25 per share in cash, which the Board did not receive until November 16, 2018. The non-binding term sheet accompanying QAR's letter made plain that QAR was acting in bad faith. It provided that the offer would be considered void if the term sheet was not executed by the Company prior to the close of business on November 19, 2018, only one business day after the Board's receipt of the offer.

94.     On November 19, 2018, the Special Committee sent a letter to QAR informing QAR that (i) the Special Committee and the full Board were carefully evaluating the offer in good faith but that it would not be possible for the directors to complete their evaluation and respond to the offer by the November 19, 2018 deadline imposed in the offer; and (ii) the directors were seeking to satisfy their fiduciary responsibilities to the stockholders of TSRI by considering and evaluating the offer against other strategic alternatives and would respond to the offer as expeditiously as possible.

95.     On November 20, 2018, QAR amended its Schedule 13D to disclose its offer to acquire all outstanding stock of the Company not already owned by QAR and/or Fitzgerald.  The amended Schedule 13D showed that as of November 20, 2018, QAR and Fitzgerald collectively owned 139,869 shares, or 7.1% of outstanding TSRI common stock, which indicates that the reporting persons owned 3,401 fewer shares than the number reported in the previous amended Schedule 13D

dated August 28, 2018.   No information was provided regarding when these transaction(s) took place, the nature of the transaction(s), and the number of securities sold and the price(s) at which they were sold.  The amended Schedule 13D is false and misleading because it fails to disclose the existence of the Zeff Group, the identity of all its members, and any arrangements between the members with respect to TSRI securities.  The amended Schedule 13D is also false and misleading because it fails to disclose required information regarding the sale of 3,401 shares of TSRI common stock.

96.    On November 27, 2018, the Company sent a letter to QAR informing it that based upon the unanimous recommendation of the Special Committee after consultation with both the Special Committee's and the Company's advisors, the Board had unanimously decided to reject its offer.   The Board and the Special Committee concluded that the consideration offered by QAR was inadequate and did not reflect the true value of TSRI common stock and was not in the best interests of the Company's stockholders. The Company offered to engage in further discussion with QAR about a potential transaction.   That QAR was acting as a stalking horse and alter ego of Fintech would certainly have been known to TSRI.

97.    The QAR offer was a red herring, designed to "show" that it was not part of the Zeff Group.  In this way, the Zeff Defendants could argue that only Zeff Capital put out the Zeff Proxy, that only Fintech approached the Company for a

possible merger and that only QAR made a cash offer. This conduct is a sham. None of these actions dispel the fact that there is a Zeff Group, that they are acting in concert in ways that they are trying to conceal from the public, and that they have violated the federal securities laws.

98.    On December 7, 2018, TSRI announced that, after careful consideration and based upon the recommendation of the Special Committee, the Board had decided that it was in the best interests of the Company and its stockholders to pursue one or more strategic acquisitions. The Company also announced that the Special Committee had retained CoView Capital, Inc. as its independent financial advisor and Farrell Fritz, P.C. as its independent legal advisor.

99.    Since it appears that the Zeff Group will continue to mount a coordinated campaign by violating the federal securities law, its conduct must be deemed illegal. In the case of a proxy contest, TSRI's stockholders are entitled by law to know the material facts behind the contested positions of the parties, which includes who are members of any contesting group, what constitutes their business plan and what their efforts mean to the value of the public shareholders' shares. Shareholders are entitled to the necessary information so they make an informed decision as how to vote.

## FIRST CLAIM FOR RELIEF

(Brought as a Direct Claim for Violation of Section 14(a)
of the Exchange Act and Rule14a-9 Against All Defendants)

100.   Plaintiff repeats and realleges the allegations of each previous paragraph of the Complaint as if set forth in full herein.

101.   Section 14(a) of the Exchange Act and the SEC's proxy rules and regulations govern the information to be furnished to security holders and to be filed with the SEC when the proxies, consents, or authorizations of security holders are solicited.   Section 14(a) makes it unlawful for any person to use the mails or the means or instrumentalities of interstate commerce to solicit or permit the use of his name to solicit any proxy or consent or authorization in contravention of the rules and regulations of the SEC.   Thus, there is a prohibition on the solicitation of proxies by means of communications that contain any statement which omits to state material facts or is false and misleading with respect to any material fact.

102.   Among other things, Section 14(a) requires persons acting as a group in soliciting proxies to make disclosures regarding the identity of the members of the group, their interests in a company's securities, and any contracts, arrangements or understandings among the members of the group in Schedule 14A filings. *See* 17 C.F.R. § 240.14a-101.

103.   Defendants violated Section 14(a) and the SEC rules and regulations by failing to disclose their formation of a group, the identities and backgrounds of its

members, the contracts, arrangements or understandings of its members with respect to the Company, and its plans to change or influence control of TSRI.  Defendants have failed disclose that they are soliciting proxies for the purpose of acquiring control of the Company to maximize the value of their shares, possibility at the expense of the public shareholders.  For instance, there is no discussion as to what the Zeff Group plans are for the Company.  As the plan is to allow Haslani to control the Company,  this should be disclosed, along with full information about Fintech. Indeed, Mr. Haslani of Fintech now admits in his Affidavit filed with this Court on February 15, 2019 (at Para. 98 thereof): "My goal in having Fintech purchase stock in TSR was to use that purchase to put before TSR the opportunity to have Fintech improve the management of TSR, and to have Fintech profit from the improvement in TSR's day-to-day management and its association with Fintech."

104.   In addition, the Zeff Proxy should disclose what they believe the true value of the Company to be; the existence, nature and purpose of the Fintech Delaware litigation; the existence, nature and purpose of QAR's short deadline bid; all details surrounding the Hughes Sale; and relevant information concerning Fintech's background and history, as well as the background and history of Haslani, and  of Daniel Zeff and his companies.  The Zeff Proxy should not continue to misrepresent or omit the qualifications and *bona fides* of the two director nominees.

105.   Defendants' unlawful proxy solicitations have deprived TSRI's stockholders of their right to make informed decisions about their vote and the future of the Company and are likely to distort the outcome of the proxy contest.

106.   As a direct and proximate result of the acts and conduct of Defendants, the Company's public stockholders have been and continue to be deceived.   The public stockholders have no adequate remedy at law for the deception and fraud that has occurred to date and threatens to continue, and will be irreparably harmed in the absence of the declaratory and equitable relief

107.   Plaintiff seeks the entry of a Decree requiring the Zeff Group to amend the Zeff Proxy to make full and complete disclosure as required by the federal proxy laws and regulations; destroy any proxies obtained prior to such amendment and until such amendment is made;  and providing that the Zeff Group is prohibited from voting any of its shares until it has acted properly.

## SECOND CLAIM FOR RELIEF

(Brought For Declaratory and Injunctive Relief For Breaches of Fiduciary Duty)

108.   Plaintiff repeats and realleges the allegations of each previous paragraph of the Complaint as if set forth in full herein.

109.   Due to their actions in concert, their joint plans, and their coordinated activities, and their written admissions, the Zeff Group members constitute a group;

110. As holders of 48.8% of TSRI's shares, the Zeff Group can exert power and undue influence over major corporate activities and approve and veto measures with little or no support from other shareholders. As such, they meet the definition of a control group, and have all of the attendant fiduciary duties.

111. Zeff Capital (but not the other members of the Zeff Group) launched a proxy solicitation seeking to appoint its two nominees to the TSRI Board; to "request" a declassified board; to restrict new board appointments to those approved by 80% of directors; and to repeal any by-laws enacted after August 27, 2018 (the date on which TSRI announced it had amended its by-laws concerning the calling of a special meeting). The TSRI annual meeting of stockholders was scheduled to be held on November 28, 2018 and will be rescheduled in the coming months.

112. The Zeff Group has the legal right to put forward shareholder proposals. However, such proposals must be fair, and not intended as here to disadvantage the public shareholders in favor of the self-interest of the controlling group.

113. The proposals to "request" a declassified board; to restrict new board appointments to those approved by 80% of directors; and to repeal any by-laws enacted after August 27, 2018 (the date on which TSRI announced it had amended its by-laws concerning the calling of a special meeting) are designed to unravel protections which, at present, serve to restrain the controller and to protect the minority shareholders.

114.   As such, such proposals by a fiduciary group cannot meet the test of entire fairness and equity. They must be declared unlawful as in breach of fiduciary duty, and enjoined from being further pursued at this time.

115.   Plaintiff faces irreparable harm if such relief is not granted and has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

(Brought For Declaratory and Injunctive Relief )

116.   Plaintiff repeats and realleges the allegations of each previous paragraph of the Complaint as if set forth in full herein.

117.   The Zeff Group's proposals are illegal under Delaware law.  The Zeff Group's proposals seek to restrain the Board from acting in various ways, even though it cannot now be known whether the decisions impeded will be necessary and beneficial.   This is impermissible under Delaware law, as the Company is managed by its Board of Directors.   Moreover, no by-law can strip the Board of powers provided to it by TSRI's Articles of Incorporation.

118.   The Zeff Group's proposal four conflicts with the TSRI's board's power's under the Articles of Incorporation.   TSRI's Articles of Incorporation provide: "The number of Directors of the Corporation shall be fixed by resolution duly adopted from time to time by the Board of Directors."   Article Fifth, second

paragraph, as amended.[11]  The TSRI Board has the power to adopt by-laws.  *See* Article Twelfth ("Amendment of By-laws. Except as otherwise provided by law, the By-laws of the Corporation may be amended or repealed by the Board of Directors.").

119.   As Zeff Group acknowledges in the Zeff Proxy, the Board did fix the number of directors, at between three and eight.  Now, Zeff Group wishes to undo this action by proxy proposal.  This it cannot do.  *Centaur Partners, IV v. Nat'l Intergroup, Inc.,* 582 A.2d 923 (Del. 1990).

120.   As Proposal Four has not been approved by the Board, it is a nullity under *Centaur,* and contradictory to the Articles of Incorporation. The proxy should not contain this unlawful proposal.

121.   Proposal Five Unlawfully Restricts the Board's Powers.  For the same reasons Proposal Four is unlawful, Proposal Five is unlawful.  The Articles of Incorporation bestow by-law making power on the Board, and this power cannot be taken away under *Centaur.*  Delaware deems improper any measure which handcuffs a Board's ability to act in what it deems to be the company's best interests.[12]

---

[11]  Available at: https://www.sec.gov/Archives/edgar/data/98338/0000950110-98-000998.txt

[12]  *See Quickturn Design Sys. v. Shapiro*, 721 A.2d 1281, 1291 (Del. 1998)(invalidating provision that would stop the Board from acting in a certain way, and holding that the "[Delaware General Corporation Law] Section 141(a) requires that any limitation on the board's authority be set out in the certificate of incorporation.  The Quickturn certificate of incorporation contains no provision purporting to limit the authority of the board in any way.").

122,   An unlawful proposal cannot be placed before stockholders for approval, and it cannot lawfully go into effect to cause irreparable harm, as each proposal will.

123.   Thus, the proposals should be preliminarily and permanently enjoined.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an order:

a.       Finding that Defendants constitute a group (the "Zeff Group"), and that the Zeff Group has control powers and fiduciary duties;

b.       Declaring that Zeff Group solicited proxy votes without filing timely, accurate, and complete Schedule 14 in violation of Section 14(a) of the Exchange Act and the applicable SEC rules;

c.       Directing the Zeff Group to file with the SEC accurate and complete 14A disclosures;

d.       Enjoining the Zeff Group from voting any of their shares prior to such time as this Court ascertains that they have filed accurate and complete Schedule 14A disclosures;

e.       Declaring the specified Zeff Proxy proposals to be unlawful, and enjoining the Zeff Group from pursuing them;

f.    Granting Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees; and

g.    Granting such other and further relief as the Court may deem just and proper.

Dated:  February 25, 2019

ROY JACOBS & ASSOCIATES

By:

Roy L. Jacobs  A member of the Bar of this Court

420 Lexington Avenue
Suite 2440
New York, NY 10170
Tel: (212) 867-1156
Fax: (212) 504-8343
rjacobs@jacobsclasslaw.com

*Attorneys for Plaintiff*